# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | * | Case No.  25-31433 |
| T.J. Trucking Enterprises, LLC | * | Judge John Gustafson<br>Chapter 11 Proceeding, Subchapter V |
| Debtor | * | |
| * | * | * |

---

## DEBTOR'S CHAPTER 11 PLAN UNDER SUBCHAPTER V OF TITLE 11 OF THE UNITED STATES CODE

---

Eric R. Neuman (0069794)
DILLER & RICE
1107 Adams Street
Toledo, Ohio 43604
Phone: (419) 724-9047
eric@drlawllc.com

ATTORNEY FOR DEBTOR

25-31433-jpg   Doc 98   FILED 09/19/25   ENTERED 09/19/25 13:09:57   Page 1 of 40

This Plan ("Plan") is being filed by the Debtor, T.J. Trucking Enterprises, LLC (hereinafter the "Debtor"), pursuant to Subchapter V of Title 11 of the United States Bankruptcy Code. This Plan is Four (4) years in length.

**Background**

**A. Description and History of the Debtor's Business**

The Debtor is an Ohio Limited Liability Company. The Debtor was founded in September of 2004 by a Mr. Timothy Bennor. ("Mr. Bennor"). Mr. Bennor is the 100% owner of the Debtor and its managing member and handles the day-to-day operations of the Debtor. The Debtor's business operation is conducted from 1109 Bernath Pkwy., Toledo, Ohio. This property is Mr. Bennor's residence. No rent is paid by the Debtor to Mr. Bennor for the use of the property.

The Debtor is a trucking company. Its business model involves being a fleet owner under which it contracts its trucks and drivers to motor carriers to haul freight. The Debtor currently operates under contracts with two motor carriers: Expeditus Transport, LLC; and Load One, LCC. These motor carriers supply the trailers and loads for the Debtor's trucks and then pay the Debtor for the use of its trucks and drivers. The agreement between the Debtor and the motor carriers involves the motor carrier retaining 30% of the receipts generated from the contracted delivery, with Debtor retaining the remaining 70% of the receipts.

At the commencement of this case, the Debtor had 12 trucks, but through the reorganizational process, the Detor intends to downsize to 9 trucks. The Debtor currently has 9 drivers who are independent contractors. In addition, the Debtor has three employees, including Mr Bennor and his wife Veronica Bennor who works as a bookkeeper for the Debtor. None of the Debtor's drivers or employees are members of a union. The Debtor's average weekly payroll for its employees and drivers is $14,500.00.

The Debtor primarily hauls freight for the automative industry. Currently, the Debtor's average monthly gross income is $140,000.00. This income, however, varies depending on the time of year with the Debtor traditionally experiencing a slow down over the July 4th holiday and during the Thanksgiving and Christmas season.

After its inception, the Debtor experienced a period of prolonged growth in its business operations, at one point owning and operating 20 trucks. In 2020, when the COVID pandemic hit, the Debtor, as with many other trucking businesses, ironically experienced a significant increase in revenue as the trucking industry was considered essential. This was the result of supply chain issues and the government providing PPP loans. This, however, subsequently resulted in an oversupply in the trucking industry. Thus, when the economy returned to normal, freight rates dropped. The Debtor, however, expected that it could weather the downturn in the industry.

However, the Debtor's financial situation experienced a further financial strain when its primary motor carrier, Tri-State Expedited, with whom the Debtor had a long business

2

relationship with, was sold to Load One in 2024. This sale resulted in the Debtor receiving decreased revenue. Particularly problematic for the Debtor's revenue, Load One ceased paying a fleet bonus, which had been paid by Tri-State Expedited of 10 cents per mile. In 2024 alone, this fleet bonus had provided the Debtor with over $151,000.00 in revenue.

To maintain its operations and pay expenses, the Debtor turned to credit cards. The Debtor also sold some vehicles. However, this eventually became unstainable. Based upon this, the decision was made to seek relief under Chapter 11 of the Bankruptcy Code.
.
The Debtor's business assets consists primarily of its trucks. As disclosed in its bankruptcy filing, these trucks, the estimate value of these vehicles and the creditor holding the lien are as follows:

| Vehicle | Est. Value | Secured Creditor | Est. Claim |
|---|---|---|---|
| 2024 Mack Anthem VIN ending 4197 | $89,165.00 | Mack Financial | $174,640.00 |
| 2024 Mack Anthem VIN ending 4198 | $89,165.00 | Mack Financial | $171,913.00 |
| 2024 Mack Anthem VIN ending 3154 | $89,165.00 | Mack Financial | $151,592.00 |
| 2024 Mack Anthem VIN Ending 0556 | $89,165.00 | SFCU | $135,852.00 |
| 2022 Freightliner Cascadia VIN ending 9857 | $40,000,00 | SFCU | $64,323.29 |
| 2023 Freightliner Cascadia VIN ending 9899 | $75,825.00 | SFCU | $105,503.41 |
| 2023 Freightliner VIN ending 9911 | $74,332.50 | TAB | $143,628.52 |
| 2024 Volvo VNL860 VIN ending 3337 | $118,957.50 | TAB | $193,261.00 |
| 2024 Volvo VNL860 VIN ending 3269 | $118,957.50 | Volvo | $191,329.00 |
| 2024 Volvo VNL860 VIN ending 3270 | $118,957.50 | Volvo | $202,329.00 |

3

| 2020 Mack Anthem VIN ending 4545 | $20,000.00 | Mack | Cross-Collateralized |
| 2019 Mack Anthem VIN ending 1997 | $20,000.00 | TAB | Cross Collateralized |

The Debtor's other personal property is minimal and consists of basic office furniture and related items and computers together with miscellaneous peripheral items worth collectively approximately $3,000.00. As well, the Debtor owns some miscellaneous trucking supplies worth collectively approximately $1,000.00.

In terms of cash or cash equivalents, the Debtor maintains a bank balance of approximately $10,000.00 and its outstanding accounts receivable average $10,000.00. In this regard, the motor carriers with whom the Debtor contracts with pay the Debtor for its services in a very expeditious manner and thus the Debtor does not have significant amounts of receivables outstanding at any given time. The Debtor also has a NOL for tax purposes of $31,764.00 However, such an asset is generally not assignable to another entity. *See* 26 U.S.C § 382.

Besides those creditors holding an interest in the Debtor's vehicles, as set forth above, the Debtor other debts consist of general unsecured debt. The Debtor estimates that its unsecured debt totals $261,214.81. The Debtor does not believe that it has any outstanding priority claims such as taxes and unpaid employee compensation.

The Debtor's income and expenses for the most recent years has been as follows:

| Year | Gross Income | Expenses | Net |
| --- | --- | --- | --- |
| 2025[1] | $842,105.56 | $908,533.18 | ($66,427.62) |
| 2024 | $2,904,200.60 | $2,584,850.19 | $319,350.41 |
| 2023 | $2,294,715.00 | $2,528,065.04 | ($233,350.04) |

The Debtor's most recent operating reports filed with the Court showed as follows;

| Period | Income | Expenses | Net |
| --- | --- | --- | --- |
| July | $22,134.40 | $32,565.89 | ($10,431.49) |
| August | $91,954.58 | $80,977.66 | $10,976.92 |

Overview of Debtor's Restructuring

---

[1] Through August 31, 2025.

4

As set forth in more detail in this Plan, the Debtor intends to retain the following equipment:

2023 Freightliner, VIN ending 9911;
2024 Volvo, VIN ending 3269;
2024 Volvo, VIN ending 3332;
2024 Mack Anthem, VIN ending 3154
2024 Mack Anthem, VIN ending 0556;
2024 Mack Anthem, VIN ending 4198; and
2024 Mack Anthem, VIN ending 1997.

The Debtor intends to surrender the following Vehicles.

2020 Mark Anthem, VIN ending 4545
2024 Mack Anthem, VIN ending 4197;
2024 Volvo, VIN ending 3270;
2022 Freightliner, VIN ending 9857; and
2023 Freightliner, VIN ending 9899

## B. Liquidation Analysis

To confirm the Plan, the Bankruptcy Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity-interest holders would receive in a chapter 7 liquidation. The liquidation analysis required by 11 U.S.C. § 1190 is attached to the Plan as Exhibit A. Under the Liquidation Analysis, general unsecured creditors would receive $0.00 if this case were to proceed under Chapter 7 of the United States Bankruptcy Code.

## C. Ability to Make Future Plan Payments and Operate Without Further Reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. The Plan Proponent's financial projections show that the Debtor will have total projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the four (4) year term of this Plan of $28,078.19. Attached hereto as Exhibit B are the Debtor's financial projections. ("Budget").

The final Plan payment is expected to be paid on the Third Anniversary from the Effective Date of this Plan.

### ARTICLE 1: SUMMARY

This Plan of Reorganization under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of the Debtor from its Disposable Income.

This Plan provides for:

1 class of priority claims;

5

5 classes of secured claims;
1 class of non-priority unsecured claims; and
1 class of equity interest.

**Payment of non-priority unsecured claims.** Non-priority unsecured creditors holding allowed claims will receive estimated distributions over the length of this Plan of $26,079.47. ("Total Disposable Income") which the proponent of this Plan has valued at approximately 10 cents on the dollar. These figures are based upon the following figures:

Total Disposable Income in Plan    $26,079.47
Administrative Expenses    $20,000.00 (est.)
Priority Claims    $0.00
Total general unsecured claims    $261,214.81 (est.)

Please Note. The Total general unsecured claims is just an estimate and the amount of total general unsecured claims may increase as the Debtor intends to both surrender certain trucks under this Plan and to pay only the secured value of the remaining trucks, which may result in unsecured deficiency claims.

**Payment of administrative expenses and priority claims:** This Plan provides for full payment of administrative expenses and priority claims. All creditors should refer to Articles 3 through 8 of this Plan for information regarding the precise treatment of their claim.

***Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)***

## ARTICLE 2: CLASSIFICATION OF CLAIMS AND INTERESTS

**2.01: Class 1. Priority Claims**

This class consists of all allowed claims entitled to priority under § 507(a) of the Code (except administrative expenses under § 507(a)(2) ["gap" period claims in an involuntary case under § 507(a)(3),] and priority tax claims under § 507(a)(8)).

**2.02: Class 2. Secured Claim of Mack Financial**

This Class consists of the Secured Claim of Mack Financial

**2.03: Class 3. Secured Claim of Transportation Alliance Bank Inc.**

This Class consists of the Claim of the Secured Claim of Transportation Alliance Bank.

**2.04: Class 4. Secured Claim of Sun Federal Credit Union**

This Class consists of the Claim of the Secured Claim of the Sun Federal Credit Union.

**2.05: Class 5. Secured Claim of Volvo Financial Services.**

6

This Class consists of the Secured Claim of Volvo Financial Services.

## 2.06 Class 6. Secured Claim of Banc of America Leasing and Capital, LLC

This Class consist of the Secured Claim of Banc of America Leasing and Capital, LLC.

## 2.07: Class 7. General Unsecured Claims.

This Class consists of all non-priority unsecured claims not otherwise classified and allowed under § 502 of the Code.

## 2.08 Class 8. Equity Interest

This Class consists of all outstanding membership interests in the Debtor.

## ARTICLE 3: TREATMENT OF ADMINISTRATIVE EXPENSES, PRIORITY TAX CLAIMS, AND QUARTERLY AND COURT FEES

## 3.01: Unclassified claims.

Under section § 1123(a)(1), allowed administrative expenses ["gap" period claims in an involuntary case allowed under § 502(f) of the code,] and priority tax claims are not in classes.

## 3.02: Administrative expenses.

If this Plan is consensually confirmed pursuant to § 1191 of the Code, Administrative expenses allowed under § 503 of the Code [and a "gap" claim in an involuntary case allowed under § 502(f) of the Code,] will be paid in full on the later of Effective Date of this Plan or when such claim arises, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Except if provided otherwise in this Plan, if this Plan is not consensually confirmed pursuant to § 1191 of the Code, administrative expenses allowed under § 503 of the Code [and a "gap" claim in an involuntary case allowed under § 502(f) of the Code,] will be paid as follows consistent with section 1191(e) of the Code:

| Type | Treatment |
|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | Paid in full on the Effective Date, or according to the terms of the obligation, if later. |

7

| | |
|---|---|
| Administrative Tax Claim | Consistent with § 1191(e) of the Code, such claims will be paid pro-rata, on a monthly basis, with other administrative claims and in the order of priority set forth in §§ 503 and 507 of the Code. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date. | Consistent with § 1191(e) of the Code, such claims will be paid pro-rata, on a monthly basis, with other administrative claims and in the order of priority set forth in §§ 503 and 507 of the Code. |
| Professional fees, including fees of Trustee and Debtor's counsel, as approved by the Bankruptcy Court. | Consistent with § 1191(e) of the Code, such claims will be paid pro-rata, on a monthly basis, with other administrative claims and in the order of priority set forth in §§ 503 and 507 of the Code. |
| Other Administrative Expenses | Consistent with § 1191(e) of the Code, such claims will be paid pro-rata, on a monthly basis, with other administrative claims and in the order of priority set forth in §§ 503 and 507 of the Code. |

**3.03: Priority tax claims.**

Unless it agrees to a different treatment with respect to its claim, and except as provided and specified in this Plan, each holder of an allowed priority tax claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code shall be paid in cash, in full, on the Effective Date; provided, however, (a) the Debtor reserves the right to elect that holders of such Allowed Tax Claims receive cash payments deferred to the extent permitted by Section 1129(a)(9)(C) of the Code and, in such event, interest shall be paid on that portion of such Allowed Tax Claim at a rate to be agreed to by the Debtor and the appropriate governmental unit or, if they are unable to agree, to be determined by the Bankruptcy Court; and (b) if such Allowed Tax Claim is for tax assessed against property of the Estate, such Claim does not exceed the value of the interest of the Estate in such property. Claims in this Class shall be entitled to receive payment (1) ahead

8

of general unsecured claims as provided for in this Plan, and (2) in accordance with the order of priority set forth in § 507 of the Bankruptcy Code.

At the time of the filing of this Plan, the only priority claim that was filed is for the amount of 9,362.44 as filed by the IRS. (Cl. No. 4-1). In this case, the Debtor will pay priority claims over the three year length of this Plan as provided Section 1129(a)(9)(C) of the Code.

### ARTICLE 4: TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**4.01: Claims and interests are treated as follows under this Plan:**

**Class 1 – Priority claims**

This Class consists of all allowed priority claims under § 507 of the Code except those in Article 3 of the Plan. The Debtor does not believe that any claims exist in this Class.

**Claims in this Class are Impaired and are entitled to Vote on this Plan.**

Treatment

Unless a claimant agrees to a different treatment, any claimant holding an allowed claim in this Class shall be entitled to be paid in full, in deferred payments, on the allowed amount of their claim over the length of this Plan.

Such payments shall be paid in equal quarterly installments over the length of this Plan. The Debtor shall commence making such payments on the fifth day of the month following the Effective Date of this Plan, unless such date fall on a Saturday or Sunday or other federal holiday in which case such payment shall be due on the first day thereafter. Such distributions shall be made in accordance with the order of priority set forth in § 507(a) of the Code.

**Class 2 – Secured Claim of Mack Financial Services ("Mack Financial")**

During its operation, the Debtor entered into various loan agreements with Mack Financial for the purchase of trucks. The details of these loan agreements are as follows:

Loan 1[2]

> Date: 9-27-2023
> Amount: $223,822.52
> Term: 60 months
> Interest Rate: 8.99%
> Monthly Payment: $4,660.18
> Collateral: 2024 Mack Anthem, VIN ending 4197. ("Vehicle 1").

Loan 2

---

[2] Upon information and belief, this Loan may be held by Volvo Financial Services.

9

Date: 12-16-2023
Amount: $208,822.52
Term: 60 months
Interest Rate: 8.99%
Monthly Payment: $4,333.80
Collateral: 2024 Mack Anthem, VIN ending 4198. ("Vehicle 2").

Loan 3

Date: 5-12-2023
Amount: $211,883.30
Term: 60 months
Interest Rate: 8.99%
Monthly Payment: $4,397.32
Collateral: 2024 Mack Anthem, VIN ending 3154. ("Vehicle 3").

Loan 4

Date: 4-2-2020
Amount: $154,798.56
Term: 60 months
Interest Rate: Unknown
Monthly Payment: $4,397.32
Collateral: 2020 Mack Anthem, VIN ending 4545. ("Vehicle 4").

Insofar as it concerns Loan 4, the Debtor, prior to the commencement of the case, fully paid Loan 4. Notwithstanding, Mack Financial still maintains a security in Vehicle 4, based upon the other loans of Mack Financial being cross-collateralized against Vehicle 4.

The Debtor in this case has filed an Amended Motion with the Court to Determine the Value of Vehicle 2 and Vehicle 3 and the secured status of Mack Financial and/or Bank of America with respect to said Vehicles. (Doc. No. 85) ("Valuation Motion"). In the Valuation Motion, the Debtor asks that the secured interest of Mack Financial and/or Bank of America in the Vehicles be determined to be and limited to the following:/or

Vehicle 2

Amount of secured claim: $89,165.00.

Vehicle 3

Amount of secured claim: $89,165.00.

On September 15, 2025, the Court entered an Agreed Order on the Valuation Motion setting the secured value of the above property as follows: (1) Vehicle 2, with a value of $90,000.00; and

10

Vehicle 3, with a value of $90,000.00. (Doc. No. 96). This Agreed Order was entered with the Bank of America who, by way of assignment, holds the claims against both Vehicle 2 and Vehicle 3. The Claim of Bank of America in Vehicle 2 and Vehicle 3 shall be dealt with Class 6 of this Plan.

**The Claim in this Class is impaired and is entitled to Vote on this Plan.**

Treatment for Vehicle 1.

The Debtor shall surrender to Mack Financial Vehicle 1. Unless such relief is granted earlier, confirmation of this Plan shall result in Vehicle 1 being abandoned from the estate and thereafter Mack Financial may exercise, to the extent permitted by applicable law, its rights with respect to Vehicle 1. Any deficiency claim of Mack Financial arising from the surrender of Vehicle 1 shall be provided for under Class 7 of this Plan, regarding the treatment of general unsecured claims.

Treatment for Vehicle 4

The Debtor shall surrender to Mack Financial Vehicle 4. Unless such relief is granted earlier, confirmation of this Plan shall result in Vehicle 4 being abandoned from the estate and thereafter Mack Financial may exercise, to the extent permitted by applicable law, its rights with respect to Vehicle 4. Any deficiency claim of Mack Financial arising from the surrender of Vehicle 4 shall be provided for under Class 7 of this Plan, regarding the treatment of general unsecured claims.

**Class 3 – Transportation Alliance Bank, Inc. ("TAB")**

During its operation, the Debtor entered into various loan agreements with Mack Financial for the purchase of trucks. The details of these loan agreements are as follows:

Loan 1

Date: 12-27-2022
Amount: $197,280.00
Matures: 2-1-2029
Interest Rate: 6.99%
Monthly Payment: $3,394.83
Collateral: 2023 Freightliner, VIN ending 9911. ("Vehicle 1").

Loan 2

Date: 3-6-2024
Amount: $222,275.20
Matures 4-5-2029
Interest Rate: 8.90%
Monthly Payment: $4,651,34

Collateral: 2024 Volvo, VIN ending 3337. ("Vehicle 2").

Loan 3

Date: 9-19-2018
Amount: $165,994.24
Maturity Date: 9-27-2023
Interest Rate: 8.99%
Monthly Payment: $3,263.97
Collateral: 2019 Mack Anthem, VIN ending 1997. ("Vehicle 3").

Insofar as it concerns Loan 3, the Debtor, prior to the commencement of the case, fully paid Loan 3. Notwithstanding, TAB still maintains a security in Vehicle 3, based upon the other loans of TAB being cross-collateralized against Vehicle 3.

In addition to Vehicle 1, Vehicle 2, and Vehicle 3, TAB claims security interest in all of the Debtor's other personal property. ("Personal Property"). This interest was perfected by the filing of a UCC-1 Financing Statement with the Ohio Secretary of State on September 30, 2015, designated document number OH00189488200. A continuation Statements was filed on September 28, 2020.

The Debtor in this case has filed a Motion with the Court to Determine the Value of Vehicle 1, Vehicle 2, Vehicle 3 and the Debtor's Personal Property and the secured status of TAB with respect to said Vehicles and Personal Property. (Doc. No. 50) ("Valuation Motion"). In the Valuation Motion, the Debtor asked that the secured interest of TAB in the Vehicles and Personal Property be determined to be and limited to the following

Vehicle 1

Amount of secured claim: $74,332.50

Vehicle 2

Amount of secured claim: $118,957.50

Vehicle 3

Amount of secured claim: $20,000.00

Personal Property

Amount of secured claim: $28,437.66

On August 26, 2025, the Court entered an Order on the Valuation Motion setting the secured value of the above property in accordance with that requested under the Valuation Motion. (Doc. No. 74).

25-31433-jpg    Doc 98    FILED 09/19/25    ENTERED 09/19/25 13:09:57    Page 12 of 40

**The Claim in this Class is impaired and is entitled to Vote on this Plan.**

Treatment for Vehicle 1.

The Claim of TAB in Vehicle 1 shall be deemed a secured claim, under 11 U.S.C. § 506, in the amount of $74,332.50. ("Secured Claim").

Any remaining deficiency claim of TAB under Loan 1 in Vehicle 1, to the extent it is an allowed claim, shall be treated as a general unsecured claim and shall be dealt with and provided for in Class 7 of the Plan regarding the treatment afforded to general unsecured creditors.

Pursuant to 11 U.S.C. § 1191(c)(1), the Debtor shall pay the present value of the Secured Claim of TAB in Vehicle 1 based upon an amortization of the Secured Claim in Vehicle 1 over a period of four years at an annually compounded interest rate of 9.5%. To the extent the Secured Claim of TAB is determined to be $74,332.50, pursuant to the Valuation Motion, payments on the Claim of TAB in Vehicle 1 shall total $1,853.66 per month.

Such monthly payment is subject to adjustment based upon any agreement entered into between the Debtor and TAB Financial with respect to the value of Vehicle 1 or in such amount as any Order entered by the Court with respect to Vehicle 1 under the Valuation Motion. Based thereon, to the extent the Debtor and TAB agree to a different value for Vehicle 1 or to the extent an Order is entered by the Court under the Valuation Motion with respect to Vehicle 1, the amount of the monthly payment to TAB shall be adjusted, consistent with the above terms, to conform to the value of Vehicle 1 and the secured claim of TAB in Vehicle 1.

To the extent provided for under applicable, until the allowed amount of the Secured Claim of TAB is paid in full, according to the terms of this Plan, TAB shall, on account of its Secured Claim, retain its secured interest in Vehicle 1 up to the amount due and owing on its Secured Claim. Upon the Secured Claim of TAB being fully paid according to the terms of this Plan, any further interests claimed by TAB in Vehicle 1 shall vest in the Reorganized Debtor free and clear of such interests.

Treatment for Vehicle 2.

The Claim of TAB in Vehicle 2 shall be deemed a secured claim, under 11 U.S.C. § 506, in the amount of $118,957.50. ("Secured Claim").

Any remaining deficiency claim of TAB under Loan 2 in Vehicle 2, to the extent it is an allowed claim, shall be treated as a general unsecured claim and shall be dealt with and provided for in Class 7 of the Plan regarding the treatment afforded to general unsecured creditors.

Pursuant to 11 U.S.C. § 1191(c)(1), the Debtor shall pay the present value of the Secured Claim of TAB in Vehicle 2 based upon an amortization of the Secured Claim in Vehicle 2 over a period of four years at an annually compounded interest rate of 9.5%. To the extent the Secured Claim of TAB is determined to be $118,957.50, pursuant to the Valuation Motion, payments on

13

the Claim of TAB in Vehicle 2 shall total $2,966.48 per month.

Such monthly payment is subject to adjustment based upon any agreement entered into between the Debtor and TAB Financial with respect to the value of Vehicle 2 or in such amount as any Order entered by the Court with respect to Vehicle 2 under the Valuation Motion. Based thereon, to the extent the Debtor and TAB agree to a different value for Vehicle 2 or to the extent an Order is entered by the Court under the Valuation Motion with respect to Vehicle 2, the amount of the monthly payment to TAB shall be adjusted, consistent with the above terms, to conform to the value of Vehicle 2 and the secured claim of TAB in Vehicle 2.

To the extent provided for under applicable, until the allowed amount of the Secured Claim of TAB is paid in full, according to the terms of this Plan, TAB shall, on account of its Secured Claim, retain its secured interest in Vehicle 2 up to the amount due and owing on its Secured Claim. Upon the Secured Claim of TAB being fully paid according to the terms of this Plan, any further interests claimed by TAB in Vehicle 2 shall vest in the Reorganized Debtor free and clear of such interests.

Treatment for Vehicle 3.

The Claim of TAB in Vehicle 3 shall be deemed a secured claim, under 11 U.S.C. § 506, in the amount of $20,000.00. ("Secured Claim").

Any remaining deficiency claim of TAB in Vehicle 3, to the extent it is an allowed claim, shall be treated as a general unsecured claim and shall be dealt with and provided for in Class 7 of the Plan regarding the treatment afforded to general unsecured creditors.

Pursuant to 11 U.S.C. § 1191(c)(1), the Debtor shall pay the present value of the Secured Claim of TAB in Vehicle 3 based upon an amortization of the Secured Claim in Vehicle 3 over a period of four years at an annually compounded interest rate of 9.5%. To the extent the Secured Claim of TAB is determined to be $20,000.00, pursuant to the Valuation Motion, payments on the Claim of TAB in Vehicle 3 shall total $498.74 per month.

Such monthly payment is subject to adjustment based upon any agreement entered into between the Debtor and TAB Financial with respect to the value of Vehicle 3 or in such amount as any Order entered by the Court with respect to Vehicle 3 under the Valuation Motion. Based thereon, to the extent the Debtor and TAB agree to a different value for Vehicle 3 or to the extent an Order is entered by the Court under the Valuation Motion with respect to Vehicle 3, the amount of the monthly payment to TAB shall be adjusted, consistent with the above terms, to conform to the value of Vehicle 3 and the secured claim of TAB in Vehicle 3.

To the extent provided for under applicable, until the allowed amount of the Secured Claim of TAB is paid in full, according to the terms of this Plan, TAB shall, on account of its Secured Claim, retain its secured interest in Vehicle 3 up to the amount due and owing on its Secured Claim. Upon the Secured Claim of TAB being fully paid according to the terms of this Plan, any further interests claimed by TAB in Vehicle 3 shall vest in the Reorganized Debtor free and clear of such interests.

14

<u>Treatment for Personal Property</u>.

The Claim of TAB in the Debtor's Personal Property shall be deemed a secured claim, under 11 U.S.C. § 506, in the amount of $28,437.66. ("Secured Claim").

Any remaining deficiency claim of TAB in the Debtor's Personal Property, to the extent it is an allowed claim, shall be treated as a general unsecured claim and shall be dealt with and provided for in Class 7 of the Plan regarding the treatment afforded to general unsecured creditors.

Pursuant to 11 U.S.C. § 1191(c)(1), the Debtor shall pay the present value of the Secured Claim of TAB in the Debtor's Personal Property based upon an amortization of the Secured Claim in the Debtor's Personal Property over a period of four years at an annually compounded interest rate of 9.5%. To the extent the Secured Claim of TAB is determined to be $28,437.66, pursuant to the Valuation Motion, payments on the Claim of TAB in the Debtor's Personal Property shall total $709.16 per month.

Such monthly payment is subject to adjustment based upon any agreement entered into between the Debtor and TAB Financial with respect to the value of the Debtor's Personal Property or in such amount as any Order entered by the Court with respect to Debtor's Personal Property under the Valuation Motion. Based thereon, to the extent the Debtor and TAB agree to a different value for the Debtor's Personal Property or to the extent an Order is entered by the Court under the Valuation Motion with respect to the Debtor's Personal Property, the amount of the monthly payment to TAB shall be adjusted, consistent with the above terms, to conform to the value of the Debtor's Personal Property and the secured claim of TAB in the Debtor's Personal Property.

To the extent provided for under applicable, until the allowed amount of the Secured Claim of TAB is paid in full, according to the terms of this Plan, TAB shall, on account of its Secured Claim, retain its secured interest in the Debtor's Personal Property up to the amount due and owing on its Secured Claim. Upon the Secured Claim of TAB being fully paid according to the terms of this Plan, any further interests claimed by TAB in the Debtor's Personal Property shall vest in the Reorganized Debtor free and clear of such interests.

<u>Terms applicable to All Secured Claims of TAB</u>

Payments on the TAB Secured Claims shall be paid by the Debtor notwithstanding that this Plan is not consensually confirmed under 11 U.S.C. § 1191.

Pursuant to 11 U.S.C. § 1123(a)(5)(G), any default or penalties existing on the Effective Date of this Plan shall be deemed waived.

Payments on the allowed amount of the Secured Claims of TAB in Vehicle 1, Vehicle 2, Vehicle 3 and the Debtor's Personal Property, shall be made monthly commencing on the fifth day of month following the Effective Date of the Plan, and continuing each month thereafter,

25-31433-jpg   Doc 98   FILED 09/19/25   ENTERED 09/19/25 13:09:57   Page 15 of 40

unless such date falls on a Saturday or Sunday, or other federal holiday in which case such payment shall be due on the first business day thereafter.

Other than as provided herein, regarding the treatment afforded to TAB in this Class, all other terms of the loan agreements and related documents, including any warranties, between the Debtor and TAB shall remain in full force and effect as it concerns Loan 1, Loan 2, Loan 3 and any prior loan documents and Vehicle 1, Vehicle 2, Vehicle 3 and the Personal Property.

**Class 4 – Secured Claims of the Sun Federal Credit Union ("SFCU").**

During its operation, the Debtor entered into three loan agreements with SFCU for the purchase of three trucks. The details of these loan agreements are as follows:

Loan 1

> Date: 3-15-2023
> Amount: $200,697.38
> Term: 60 months
> Interest Rate: 7.490%
> Monthly Payment: $4,660.18
> Collateral: 2024 Mack Anthem, VIN ending 0556. ("Vehicle 1").

Loan 2

> Date: 10-18-2021
> Amount: $171,400.00
> Term: 60 months
> Interest Rate: 4.490%
> Monthly Payment: $3,201.00
> Collateral: 2022 Freightliner VIN ending 9857. ("Vehicle 2").

Loan 3

> Date: 9-13-2022
> Amount: $187,400.00
> Term: 60 months
> Interest Rate: 4.740%
> Monthly Payment: $4,397.32
> Collateral: 2023 Freightliner, VIN ending 9899. ("Vehicle 3").

The Debtor in this case has filed a Motion with the Court to Determine the Value of Vehicle 1, and the secured status of SFCU with respect to Vehicles 1. (Doc. No. 49) ("Valuation Motion"). In the Valuation Motion, the Debtor asks that the secured interest of SFCU in the Vehicles be determined to be and limited to the amount of $89,165.00. Pursuant to an agreed order entered by the Court, SFCU and the Debtor agreed that the value of Vehicle 1 under this Plan shall be in the amount of $105,000.00. (Doc. No. 92).

**The Claim in this Class is impaired and is entitled to Vote on this Plan.**

Treatment for Vehicle 1.

The Claim of SFCU in Vehicle 1 shall be deemed a secured claim, under 11 U.S.C. § 506, in the amount of $105,000.00. ("Secured Claim").

Any remaining deficiency claim of SFCU under Loan 1 in Vehicle 1, to the extent it is an allowed claim, shall be treated as a general unsecured claim and shall be dealt with and provided for in Class 7 of the Plan regarding the treatment afforded to general unsecured creditors.

Pursuant to 11 U.S.C. § 1191(c)(1), the Debtor shall pay the present value of the Secured Claim of SFCU in Vehicle 1 based upon an amortization of the Secured Claim in Vehicle 1 over a period of four years at an annually compounded interest rate of 7.49%. The payment of the Secured Claim of SFCU in Vehicle 1 shall total $2,526.29. per month.

To the extent provided for under applicable, until the allowed amount of the Secured Claim of SFCU is paid in full, according to the terms of this Plan, SFCU shall, on account of its Secured Claim, retain its secured interest in Vehicle 1 up to the amount due and owing on its Secured Claim. Upon the Secured Claim of SFCU being fully paid according to the terms of this Plan, any further interests claimed by SFCU in Vehicle 1 shall vest in the Reorganized Debtor free and clear of such interests.

Payments on the SFCU Secured Claim shall be paid by the Debtor notwithstanding that this Plan is not consensually confirmed under 11 U.S.C. § 1191.

Pursuant to 11 U.S.C. § 1123(a)(5)(G), any default or penalties existing on the Effective Date of this Plan shall be deemed waived.

Payments on the allowed amount of the Secured Claims of SFCU in Vehicle 1 shall be made monthly commencing on the fifth day of month following the Effective Date of the Plan, and continuing each month thereafter, unless such date falls on a Saturday or Sunday, or other federal holiday in which case such payment shall be due on the first business day thereafter.

Other than as provided herein, regarding the treatment afforded to SFCU in this Class, all other terms of the loan agreements and related documents, including any warranties, between the Debtor and SFCU shall remain in full force and effect as it concerns Loan 1 and Vehicle 1.

Treatment for Vehicle 2 and Vehicle 3

The Debtor shall surrender to SFCU Vehicle 2 and Vehicle 3. Unless such relief is granted earlier, confirmation of this Plan shall result in Vehicle 2 and Vehicle 3 being abandoned from the estate and thereafter SFCU may exercise, to the extent permitted by applicable law, its rights with respect to Vehicle 2 and Vehicle 3. Any deficiency claim of SFCU arising from the

surrender of Vehicle 2 and Vehicle 3 hall be provided for under Class 7 of this Plan, regarding the treatment of general unsecured claims.

**Class 5 – Volvo Financial Services ("VFS")**

During its operation, the Debtor entered into two loan agreements with VFS for two trucks. The details of these loan agreements are as follows:

Loan 1

> Date: 3-20-2024
> Amount: $224,290.20
> Term: 60 months
> Interest Rate: 9.25%
> Monthly Payment: $4,702.41
> Collateral: 2024 Volvo VNL VIN ending 3269. ("Vehicle 1").

Loan 2

> Date: 3-25-2024
> Amount: $224,290.20
> Term: 60 months
> Interest Rate: 9.25
> Monthly Payment: $4,702.41
> Collateral: 2024 Volvo VNL VIN ending 3270. ("Vehicle 2").

The Debtor in this case has filed a Motion with the Court to Determine the Value of Vehicle 1 and Vehicle 2, and the secured status of VFS with respect to said Vehicles. (Doc. No. 51) ("Valuation Motion"). In the Valuation Motion, the Debtor asks that the secured interest of VFS in the Vehicles be determined and limited to the following:

Vehicle 1

> Amount of secured claim: $118,957.50

Vehicle 2

> Amount of secured claim: $118,957.50

Pursuant to an agreed order entered by the Court, VFS agreed that the value of Vehicle 1 under this Plan shall be in the amount of $138,800.00. (Doc. No. 87). Said Order further provided that Vehicle 2 shall be surrendered to Volvo.

**The Claim in this Class is impaired and is entitled to Vote on this Plan.**

Treatment for Vehicle 1.

The Claim of VFS in Vehicle 1 shall be deemed a secured claim, under 11 U.S.C. § 506, in the amount of $138,800.00. ("Secured Claim").

Any remaining deficiency claim of VFS under Loan 1 in Vehicle 1, to the extent it is an allowed claim, shall be treated as a general unsecured claim and shall be dealt with and provided for in Class 7 of the Plan regarding the treatment afforded to general unsecured creditors.

Pursuant to 11 U.S.C. § 1191(c)(1), the Debtor shall pay the present value of the Secured Claim of VFS in Vehicle 1 based upon an amortization of the Secured Claim in Vehicle 1 over a period of four years at an annually compounded interest rate of 9.5%. The payment of the Secured Claim of VFS in Vehicle 1 shall total $3,461.29 per month.

To the extent provided for under applicable, until the allowed amount of the Secured Claim of VFS is paid in full, according to the terms of this Plan, VFS shall, on account of its Secured Claim, retain its secured interest in Vehicle 1 up to the amount due and owing on its Secured Claim. Upon the Secured Claim of VFS being fully paid according to the terms of this Plan, any further interests claimed by VFS in Vehicle 1 shall vest in the Reorganized Debtor free and clear of such interests.

Payments on the VFS Secured Claim shall be paid by the Debtor notwithstanding that this Plan is not consensually confirmed under 11 U.S.C. § 1191.

Pursuant to 11 U.S.C. § 1123(a)(5)(G), any default or penalties existing on the Effective Date of this Plan shall be deemed waived.

Payments on the allowed amount of the Secured Claims of VFS in Vehicle 1 shall be made monthly commencing on the fifth day of month following the Effective Date of the Plan, and continuing each month thereafter, unless such date falls on a Saturday or Sunday, or other federal holiday in which case such payment shall be due on the first business day thereafter.

Other than as provided herein, regarding the treatment afforded to VFS in this Class, all other terms of the loan agreements and related documents, including any warranties, between the Debtor and VFS shall remain in full force and effect as it concerns Loan 1 and Vehicle 1.

<u>Treatment for Vehicle 2.</u>

The Debtor shall surrender to VFS Vehicle 2. Unless such relief is granted earlier, confirmation of this Plan shall result in Vehicle 2 being abandoned from the estate and thereafter VFS may exercise, to the extent permitted by applicable law, its rights with respect to Vehicle 2. Any deficiency claim of VFS arising from the surrender of Vehicle 2 shall be provided for under Class 7 of this Plan, regarding the treatment of general unsecured claims.

**Class 6 – Secured Claim of Banc of America Leasing and Capital, LLC ("BofA")**

By way of assignment, BofA holds an interest in the following loans made by Mack

19

Financial Services: During its operation, the Debtor entered into various loan agreements with Mack Financial for the purchase of trucks. The details of these loan agreements are as follows:

Loan 1

> Date: 12-16-2023
> Amount: $208,822.52
> Term: 60 months
> Interest Rate: 8.99%
> Monthly Payment: $4,333.80
> Collateral: 2024 Mack Anthem, VIN ending 4198. ("Vehicle 1").

Loan 2

> Date: 5-12-2023
> Amount: $211,883.30
> Term: 60 months
> Interest Rate: 8.99%
> Monthly Payment: $4,397.32
> Collateral: 2024 Mack Anthem, VIN ending 3154. ("Vehicle 2").

The Debtor in this case has filed a Amended Motion with the Court to Determine the Value of Vehicle 1 and Vehicle 2 and the secured status of BofA with respect to said Vehicles. (Doc. No. 85) ("Valuation Motion"). In the Valuation Motion, the Debtor asks that the secured interest of BofA in the Vehicles be determined to be and limited to the following:/or

Vehicle 1

> Amount of secured claim: $89,165.00.

Vehicle 2

> Amount of secured claim: $89,165.00.

On September 15, 2025, the Court entered an Agreed Order on the Valuation Motion setting the secured value of the above property as follows: (1) Vehicle 1, with a value of $90,000.00; and Vehicle 2, with a value of $90,000.00. (Doc. No. 96).

**The Claim in this Class is impaired and is entitled to Vote on this Plan.**

Treatment for Vehicle 1.

The Claim of Bank of America in Vehicle 1 shall be deemed a secured claim, under 11 U.S.C. § 506, in the amount of $90,000.00.

Any remaining deficiency claim of Bank of America under Loan 1 in Vehicle 1, to the extent it

20

is an allowed claim, shall be treated as a general unsecured claim and shall be dealt with and provided for in Class 7 of the Plan regarding the treatment afforded to general unsecured creditors.

Pursuant to 11 U.S.C. § 1191(c)(1), the Debtor shall pay the present value of the Secured Claim of BofA in Vehicle 1 based upon an amortization of the Secured Claim in Vehicle 1 over a period of four years at an annually compounded interest rate of 9.5%. Monthly payments on the Claim of BofA in Vehicle 1 shall total $2,244.35 per month.

To the extent provided for under applicable, until the allowed amount of the Secured Claim of BofA is paid in full, according to the terms of this Plan, BofA shall, on account of its Secured Claim, retain its secured interest in Vehicle 1 up to the amount due and owing on its Secured Claim. Upon the Secured Claim of BofA being fully paid according to the terms of this Plan, any further interests claimed by BofA in Vehicle 1 shall vest in the Reorganized Debtor free and clear of such interests.

Treatment for Vehicle 2.

The Claim of Bank of America in Vehicle 2 shall be deemed a secured claim, under 11 U.S.C. § 506, in the amount of $90,000.00.

 Any remaining deficiency claim of Bank of America under Loan 2 in Vehicle 2, to the extent it is an allowed claim, shall be treated as a general unsecured claim and shall be dealt with and provided for in Class 7 of the Plan regarding the treatment afforded to general unsecured creditors.

Pursuant to 11 U.S.C. § 1191(c)(1), the Debtor shall pay the present value of the Secured Claim of BofA in Vehicle 2 based upon an amortization of the Secured Claim in Vehicle 2 over a period of four years at an annually compounded interest rate of 9.5%. Monthly payments on the Claim of BofA in Vehicle 1 shall total $2,244.35 per month.

To the extent provided for under applicable, until the allowed amount of the Secured Claim of BofA is paid in full, according to the terms of this Plan, BofA shall, on account of its Secured Claim, retain its secured interest in Vehicle 2 up to the amount due and owing on its Secured Claim. Upon the Secured Claim of BofA being fully paid according to the terms of this Plan, any further interests claimed by BofA in Vehicle 2 shall vest in the Reorganized Debtor free and clear of such interests.

Terms applicable to Vehicle 1 and Vehicle 2

Payments on the BofA Secured Claims shall be paid by the Debtor notwithstanding that this Plan is not consensually confirmed under 11 U.S.C. § 1191.

Pursuant to 11 U.S.C. § 1123(a)(5)(G), any default or penalties existing on the Effective Date of this Plan shall be deemed waived.

Payments on the allowed amount of the Secured Claims of BofA in Vehicle 1 and Vehicle 2, shall be made monthly commencing on the fifth day of month following the Effective Date of the Plan, and continuing each month thereafter, unless such date falls on a Saturday or Sunday, or other federal holiday in which case such payment shall be due on the first business day thereafter.

Other than as provided herein, regarding the treatment afforded to BofA in this Class, all other terms of the loan agreements and related documents, including any warranties, between the Debtor and BofA shall remain in full force and effect as it concerns Loan 1, and Loan 2 and Vehicle 1 and Vehicle 2.

**Class 7 – General Unsecured Claims**

This Class consists of all general unsecured claims not otherwise classified or provided for in other provisions in this Plan. Only creditors holding allowed unsecured claims shall, as provided for in 11 U.S.C. § 502(a), be entitled to receive a distribution according to the Treatment provided for in this Class. Subject to the provisions of § 502, untimely claims are disallowed, without the need for formal objection, unless allowed by court order.

**Claims in this Class are impaired and are entitled to Vote on this Plan.**

<u>Treatment</u>

Allowed unsecured claims will be paid pro-rata from the Debtor's Disposable Income, as defined in 11 U.S.C. § 1191(d), after and subject to the payment of those administrative expenses and costs provides for in Article 3 of this Plan. In no event, however, shall allowed claims in this Class, as a group, receive less than the Liquidation Value of the Debtor's assets as provided in attached Exhibit A. No interest shall accrue on any Claims in this Class.

The Debtor's Disposable Income shall be based upon the net income received by the Debtor based upon those cash flow projection as attached hereto as Exhibit B. Based upon these projections, the Debtor's total disposable income over the length of this Plan is $26,079.47.

The Debtor shall make equal monthly payments of its Disposable Income as follows:

Year 1 $182.51

Year 2 $402.48

Year 3 $760.82

Year 4 $827.48

Such monthly payments shall be disbursed, pro-rata, to claimants holding allowed claims. Such payments shall commence by the Reorganized Debtor on the fifth day of the month following the Effective Date of this Plan and shall continue to be made on the first day each

25-31433-jpg    Doc 98    FILED 09/19/25    ENTERED 09/19/25 13:09:57    Page 22 of 40

month thereafter until completion of the Plan unless such day falls on a Saturday, Sunday or other federal holiday in which case such payment shall be due on the first business day thereafter..

**Class 8 – Equity holders**

This class consists of the outstanding membership interest held by Mr. Bennor in the Debtor.

**Interests in this Class are not impaired and are not entitled to Vote on this Plan.**

<u>Treatment</u>

Confirmation of this Plan shall cause all prepetition membership interests issued by the Debtor to be revested in and retained by those entities holding an interest in the outstanding membership interest of the Debtor as of the Petition Date and shall be subject to and based upon the terms and conditions as they existed on the Petition Date including under any Operating Agreements and other duly executed business documents.

ARTICLE 5: ALLOWANCE AND DISALLOWANCE OF CLAIMS

**5.01: Disputed claim**.

A disputed claim is a claim that has not been allowed or disallowed and as to which either:

(i) A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

<u>Timing of Objections</u>: The Debtor or any party in interest may object to the allowance of any Claim, whether listed on the Schedules filed by Debtors, or filed by any Creditor, on or before the later of 60 days after the Effective Date of the Plan, unless a proof of claim or an amendment to an existing proof of claim is filed more than 30 days after the Effective Date in which case the Debtor or any party in interest shall be required to file an objection to such claim within 60 days after the filing of such claim or amendment thereto.

**5.02: Delay of distribution on a disputed claim.**

No distribution will be made on account of a disputed claim unless and until it is allowed.

**5.03 Settlement of disputed claims.**

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

23

**5.04 Full Payment of Small Claims**

In its discretion, the Debtor shall have the right to fully pay, in one lump sum, any claim under this Plan where the total amount due to such claimant under this Plan is $500.00 or less.

**5.05 Deficiency Claim**

Any creditor who holds a secured claim, but whose collateral is surrendered to the secured claimant or otherwise repossessed by the secured claimant. shall file with the Court a deficiency claim within 30-days of the Effective Date of the Plan. If such deficiency claim is not timely filed, such claim shall not be allowed and shall not be entitled to a distribution under this Plan. Any secured claim of such claimant shall not be paid in this Plan.

## ARTICLE 6: PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

(a) Unless specifically rejected prior to confirmation of this Plan, the Debtor assume, and if specified assigns, the following executory contracts and unexpired leases as of the Effective Date of the Plan:

(1) Expeditus Transport, LLC. Under this assumption, no cure is necessary.

(2) Load One, LLC. Under this assumption, no cure is necessary.

(3) Daimler Truck North America LLC. Under this assumption, no cure is necessary.

Assumption of Extended Manufacturer's Warranty on Freightliner Trucks owned by Debtor.

(4) Mack Trucks. Under this assumption, no cure is necessary.

Assumption of Extended Manufacturer's Warranty on Mack Trucks owned by Debtor.

(5) Volvo Trucks. Under this assumption, no cure is necessary.

Assumption of Extended Manufacturer's Warranty on Volvo Trucks owned by Debtor.

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, either before the Effective Date or under Article 6(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtors will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 45 days after the date on which the Bankruptcy Court enters the order confirming this Plan.

# ARTICLE 7: MEANS FOR IMPLEMENTATION OF THE PLAN

The Plan will be implemented and funded through the future business operations of the Debtor..

Order of Distribution: After payment of allowed secured claims, funds shall be disbursed in the following order of priority:

(1) Payment of allowed Administrative Expenses as provided in Section 3.02;

(2) Payment of Priority Tax Claims provided in Section 3.03;

(3) Payment of Priority Claims provided in Section 4.01;

(4) Payment to those creditors, on a pro-rata basis, holding allowed claims in Class 9 of the Plan.

Section 1129(a)(5) Disclosure-The following is disclosed pursuant to 11 U.S.C. § 1129(a)(5):

Mr. Bennor will continue to serve as the sole managing member of the Reorganized Debtor and perform managerial duties for the Reorganized Debtor. He will continue to receive a weekly salary of $1,525.00 per week for these services. The Reorganized Debtor will also pay for Mr. Bennor's health insurance.

Veronica Bennor, the wife of Mr. Bennor, will continue to work for the Reorganized Debtor as a bookkeeper. Consistent with past practices, Mrs. Bennor will be paid a weekly gross salary of $375.00. The Reorganized Debtor will not provide to Mrs. Bennor any other form of compensation or benefit.

No other insiders will be employed by the Debtor.

The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date and/or the 5th day of the month following the Effective Date. For this purpose, the Debtor expects to have cash on hand of approximately $15,000.00 and receipts and due receivables of approximately $85,000.00 between the time of the Confirmation Date and the Effective date of the Plan, 30 days later. Said funds are sufficient to commence making those payments as provided for in this Plan.

To the extent there are not sufficient funds to make these required payments, Mr. Bennor will forego his salary to assist in making the required plan payments.

# ARTICLE 8: VESTING

All property of the estate will remain property of the Bankruptcy Estate and subject to the automatic stay under 11 U.S.C. §362 until the Court grants the Debtor a discharge, except as otherwise provided in the Plan or the Confirmation Order.

Under 11 U.S.C. §§ 1141(b) and 1186, on granting of a Discharge, all property of the estate will vest in the Reorganized Debtor, except as otherwise provided in the Plan or the Confirmation Order.

Under 11 U.S.C. § 1141(c), on Confirmation of the Plan, all property of the Debtor dealt with in the Plan, tangible and intangible, including, without limitation, licenses, furniture, fixtures, and equipment, will be free and clear of all Claims and Equitable Interests of the Debtor, except as otherwise provided in the Plan or the Confirmation Order. Pursuant to 11 U.S.C. § 1141(b), on Confirmation of the Plan all property of the estate will revest in the Reorganized Debtor, except as otherwise provided in the Plan or the Confirmation Order.

## ARTICLE 9: CLAIMS OF DEBTOR

### 9.01 Preservation of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtor, whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved Notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtor pursuant to the releases and exculpations contained in the Plan, which shall be deemed released and waived by the Debtor and the Reorganized Debtor as of the Effective Date.

## ARTICLE 10: GENERAL PROVISIONS

### 10.01 Definitions and rules of construction.

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

**Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b)

25-31433-jpg    Doc 98    FILED 09/19/25    ENTERED 09/19/25 13:09:57    Page 26 of 40

of the Code, including without limitation, any actual and necessary expenses of reserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**Allowed Claim**: Except as otherwise specified in this Plan, any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**Allowed Secured Claim**: Except as otherwise specified in this Plan, Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

**Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**Bankruptcy Court**: The United States Bankruptcy Court for the Northern District of Ohio.

**Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtors, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

27

**Chapter 11 Case or Case**: This case under chapter 11 of the Bankruptcy Code in which the Debtor, T.J. Trucking Enterprises, LLC is the Debtor-in-Possession.

**Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**Debtor** and **Debtor-in-Possession**: The Debtor, T.J. Trucking Enterprises, LLC, the debtor-in-possession in this Chapter 11 Case.

**Disposable Income**: Shall have that meaning ascribed to such term under § 1191(d) of the Code

**Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed or which is subject to continuing litigation.

**Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**Equity Interest**: An ownership interests in the Debtor.

**Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

28

**Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**Petition Date**: July 11, 2025, the date the chapter 11 petition for relief was filed.

**Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**Reorganized Debtor**: The Debtor after the Effective Date.

**Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtors with the Bankruptcy Court listing liabilities and assets.

**Total Disposable Income:** means that income which, pursuant to Exhibit B, the Debtors have calculated its income to be for purposes of 11 U.S.C. § 1181(d).

**Trustee**: Patricia Fugee, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

## 10.02 Effective Date.

The Effective Date of this Plan is the day that is 30 days after the entry of the Confirmation Order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the day after the date on which the stay expires or is otherwise terminated. These periods are calculated as provided in Federal Rule of Bankruptcy Procedure 9006(a)(1).

## 10.03 Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

## 10.04 Binding effect.

The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

## 10.05 Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

25-31433-jpg    Doc 98    FILED 09/19/25    ENTERED 09/19/25 13:09:57    Page 29 of 40

**10.06 Controlling effect.**

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Ohio govern this Plan and any agreements, documents, and instruments executed in connection with this
Plan, except as otherwise provided in this Plan.

**10.07 Corporate governance**.

Upon confirmation, the Board of Directors shall promptly take the required action to amend the debtor's charter to include provisions prohibiting the issuance of nonvoting stock, and providing, as to the several classes of securities possessing voting power, fair and equitable distribution of such power among such classes, including, in the case of any class of stockholders having a preference over another class of stockholders with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

**10.08 Retention of Jurisdiction**

The Bankruptcy Court confirming the Plan shall retain jurisdiction to the full extent necessary to administer this case after Plan confirmation and to adjudicate any related adversary proceedings or contested matters, including those relating to the Plan, such as concerning the Plan's construction, implementation, or modification. Neither this provision nor anything in this Plan constitutes a limitation on or an expansion of the jurisdiction authorized by title 28 of the United States Code.

### ARTICLE 12: DISCHARGE

If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt:

(i)     imposed by this Plan; or

(ii)    (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 4 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 4 years of the Plan, or as otherwise provided in § 1192; or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Third-Party Release-Nothing in this Plan shall be construed to release or discharge any third party, including Mr. Butler, from any liability for any claim in this case.

## ARTICLE 13: PAYMENTS, REPORTING AND TRUSTEE'S OBLIGATIONS

. The Debtor shall make all Distributions to Creditors provided for in the Plan whether confirmed under Section 1192(a) or (b), and the following shall apply:

US Trustee Reporting.

The Debtor shall file with the court Quarterly Post Confirmation Operating Reports ("Quarterly Reports") as required by the US Trustee no later than 20 days after the end of each quarter after the Effective Date or at such times as designated by the US Trustee until all Distributions are completed under the Plan.

Payments and Distributions to Disputed Claims.

Except as otherwise provided in the Plan, no partial Plan payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution by the Debtor of such dispute by settlement or Final Order. For purposes of clarity, each class's claimants will not be entitled to a Distribution until all claims within the applicable class are final. Unless otherwise agreed to by the Debtor or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a Distribution until such dispute is resolved by settlement or Final Order. The provisions of this section are not intended to restrict payment of any unclassified claims or classified classes of claims which are not disputed. The amount of any Distribution that would otherwise be due on a Disputed Claim shall be held in a designated distribution account pending final resolution of said Disputed Claim.

Right to Accelerate Payment.

The Debtor may pay any Allowed Claim prior to the projected payment date in whole or in full without penalty.

Discharge of Trustee.

If the Plan is confirmed pursuant to Section 1192(a) or (b) the Trustee will be discharged upon the filing of a notice of substantial consummation of the Plan, and the Trustee's filing of the appropriate trustee report with the Bankruptcy Court.

If the Plan is confirmed pursuant to Section 1192(a) or (b) and there is an Event of Default under the Plan the US Trustee may reappoint the Trustee and if so reappointed the Trustee shall be discharged upon completion of all Plan payments or other final administration of the case, and the Trustee should submit the final report and final account of the administration of the estate to the United States Trustee for review pursuant to section 1183(b)(1). After review,

25-31433-jpg    Doc 98    FILED 09/19/25    ENTERED 09/19/25 13:09:57    Page 31 of 40

the final report and account will be filed with the Court and the Trustee will seek a discharge of her duties as Subchapter V Trustee.

<u>Post-Confirmation Fees and Expenses of the Subchapter V Trustee</u>.

The Trustee will not be required to obtain Court approval to pay such fees which fees may be paid without Court approval. Annually the Trustee will provide notice of the post confirmation costs utilizing the Court's negative notice procedures upon fourteen (14) days' notice to the Debtor, the Office of the United States Trustee, and all claimholders. In the event of any objection to the Trustee's fees, the Court shall retain jurisdiction to hear such dispute. Upon Court approval of the Trustee's fees and expenses, the Debtor shall pay any such unpaid fees and expenses no earlier than 14 business days after such Court Order. The Trustee's fees shall be an Administrative Claim and paid as payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor pursuant to Section 1191(d)(2) and thus deducted from the Debtor's income prior to the calculation of Disposable Income.

<u>Trustee Obligations Related to the Pursuit of Causes of Action or Disputed Claims.</u>

Unless reappointed upon default, the Trustee shall not have any obligation to pursue or manage the Debtor's retained Causes of Action or Disputed Claims, which Causes of Action and Disputed Claims shall remain the sole obligation of the Debtor.

## ARTICLE 14: LENGTH OF PLAN

Unless otherwise ordered by the Bankruptcy Court, the length of this Plan shall be four (4) years, commencing on the Effective Date.

## ARTICLE 15: REMEDIES IN EVENT OF DEFAULT UNDER PLAN

If the Debtor fails to make payments and distributions as required under the Plan, any creditor or party in interest may seek to have this case converted to a proceeding under Chapter 7 of the United States Bankruptcy Code, seek dismissal of this case under 11 U.S.C. § 1112 or seek any other remedy provided by law or in the Plan.

## ARTICLE 16: TAX CONSEQUENCES OF PLAN

The Plan and the resulting tax consequences may be complex, and the tax consequences of the Plan will depend upon certain factual determinations. No ruling has been or will, prior to the Effective Date, be requested from the Internal Revenue Service regarding the tax consequences of the Plan. No assets of the Debtor have been sold or transferred since the filing of this case and as a result, no tax consequences as to such assets have arisen since the filing of this case. However,

**BECAUSE THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND MAY VARY BASED ON INDIVIDUAL CIRCUMSTANCES THIS DISCLOSURE STATEMENT RENDERS NO TAX ADVICE ON THE TAX CONSEQUENCES OF THE**

25-31433-jpg    Doc 98    FILED 09/19/25    ENTERED 09/19/25 13:09:57    Page 32 of 40

**IMPLEMENTATION OF THE PLAN TO ANY PARTICULAR CREDITOR, TO THE DEBTOR, OR TO INTEREST HOLDERS. EACH PARTY IS URGED TO CONSULT HIS OR HER TAX ADVISOR AS TO THE TAX CONSEQUENCES OF THE PLAN TO HIM OR HER INCLUDING ANY CONSEQUENCES UNDER STATE OR LOCAL TAX LAWS.**

The following constitutes a summary of the potential tax consequences which may arise upon confirmation of the Plan.

1. Tax Consequences to the Debtors.

Under the Tax Code, a U.S. taxpayer generally must include in gross income the amount of any cancellation of indebtedness income ("COD Income") realized during the taxable year, which generally includes the amount of principal debt discharged and any interest that has been previously accrued and deducted for tax purposes but remains unpaid at the time the indebtedness is discharged. The Tax Code permits a debtor in bankruptcy to exclude its COD Income from gross income, but requires the debtor to reduce certain tax attributes by the amount of the excluded COD Income. It is likely that the Debtors will realize a significant amount of COD Income upon the consummation of the Plan. The Debtor will not be required to include COD Income in gross income because the indebtedness will be discharged while the Debtors are under the jurisdiction of a court in a Title 11 case.

2. Certain U.S. Federal Income Tax Consequences to Holders of Claims and Equity Interests

The U.S. Federal Income Tax consequences to holders of allowed claims arising from the distributions to be made in satisfaction of their claims pursuant to a bankruptcy plan of reorganization may vary, depending upon, among other things: (a) the type of consideration received by the holder of a claim in exchange for the indebtedness it holds; (b) the nature of the indebtedness owed to it; (c) whether the holder has previously claimed a bad debt or worthless security deduction in respect of its claim against the corporation; (d) whether such claim constitutes a security; (e) whether the holder of a claim is a citizen or resident of the United States for tax purposes, or otherwise subject to U.S. federal income tax on a net income basis; (f) whether the holder of a claim reports income on the accrual or cash basis; and (g) whether the holder of a claim receives distributions under the bankruptcy plan in more than one taxable year. For tax purposes, the modification of a claim may represent an exchange of the claim for a new claim, even though no actual transfer takes place. In addition, where a gain or loss is recognized by the holder, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the holder, whether the claim constitutes a capital asset in the hands of the holder and how long it has been held or is treated as having been held, whether the claim was acquired at a market discount, and whether and to what extent the holder previously claimed a bad debt deduction with respect to the underlying claim.

Internal Revenue Service Circular 230 Notice: To ensure compliance with Internal Revenue Service Circular 230, holders of Claims and Equity Interests are hereby notified that: (A) any discussion of federal tax issues contained or referred to in this Disclosure Statement is

25-31433-jpg    Doc 98    FILED 09/19/25    ENTERED 09/19/25 13:09:57    Page 33 of 40

not intended or written to be used, and cannot be used, by holders of Claims or Equity Interests for the purpose of avoiding penalties that may be imposed on them under the Internal Revenue Code; (B) such discussion is written in connection with the promotion or marketing by the Debtor of the transactions or matters addressed herein; and (C) holders of Claims and Equity Interests should seek advice based on their particular circumstances from an independent tax advisor.

Dated: September 19, 2025                    /s/Timothy Bennor
                                             Timothy Bennor
                                             Managing Member

25-31433-jpg    Doc 98    FILED 09/19/25    ENTERED 09/19/25 13:09:57    Page 34 of 40

| Asset | Scheduled Value | Liquidation Value | Secured Claim | Value to Estate | Note |
|---|---|---|---|---|---|
| Cash | $13,924.34 | $13,924.34 | $366,889.82 | $0.00 | Secured Claims of Transporation Alliance Bank totals app. $336,889.82 |
| Accounts receivable | $9,113.32 | $9,113.32 | $366,889.82 | $0.00 | See above note |
| Office Furniture and other office property | $2,000.00 | $1,000.00 | $366,889.82 | $0.00 | see above note |
| 2 laptop computers, 2 printers | $1,000.00 | $500.00 | $366,889.82 | $0.00 | see above note |
| 2024 Mark Athhem VIN ending 4197 | $94,410.00 | $75,528.00 | $174,640.00 | $0.00 | Liquidation Value reduced by 20%. Mack Financial holds secured claim |
| 2024 Mack Anthem VIN ending 4198 | $94,410.00 | $75,528.00 | $171,913.00 | $0.00 | Liquidation Value reduced by 20%. Mack Financial holds secured claim |
| 2024 Mack Anthem VIN ending 3154 | $88,900.00 | $71,200.00 | $151,592.00 | $0.00 | Liquidation Value reduced by 20%. Mack Financial holds secured claim |
| 2020 Mack Anthem VIN ending 4545 | $20,000.00 | $16,000.00 | $0.00 | $0.00 | Liquidation Value reduced by 20%. Loan Fully Paid, but crosscollateralized against other claims of Mack Financial |
| 2022 Freightliner Cascadia VIN ending 9857 | $40,000.00 | $32,000.00 | $64,323.29 | $0.00 | Liquidation Value reduced by 20%. Sun Federal Credit Union holds secured claim |
| 2023 Freightliner Cascadia VIN ending 9899 | $75,825.00 | $60,660.00 | $105,503.41 | $0.00 | Liquidation Value reduced by 20%. Sun Federal Credit Union holds secured claim |
| 2024 Mark Anthem VIN ending 0556 | $72,000.00 | $57,600.00 | $135,852.15 | $0.00 | Liquidation Value reduced by 20%. Sun Federal Credit Union holds secured claim |
| 2024 Volvo VNL860 VIN ending 3337 | $115,110.00 | $92,088.00 | $193,261.00 | $0.00 | Liquidation Value reduced by 20%. Transporation Alliance Bank holds secured claim |
| 2023 Freightliner Cascadia VIN ending 9911 | $87,450.00 | $69,960.00 | $143,628.52 | $0.00 | Liquidtion Value reduced by 20%. Transporation Alliance Bank holds secured claim. |
| 2024 Volvo VNL860 VIN ending 3270 | $115,110.00 | $92,088.00 | $191,329.00 | $0.00 | Liquidation Value reduced by 20%. Volvo Financial Services holds secured claim |
| 2024 Volvo VNL860 VIN ending 3269 | $115,110.00 | $92,088.00 | $188,100.00 | $0.00 | Liquiation Value reduced by 20%. Volvo Financial Services holds secured claim. |
| NOL | $31,764.00 | $0.00 | $0.00 | $0.00 | NOL cannot be sold and their use by another company is limited by 26 U.S.C § 382 |
| Sub Totals | $976,126.66 | $759,277.66 | | $0.00 | |

| | | |
|---|---|---|
| Other Deductions | Priority Claims | $0.00 |
| | Chapter 11 Administrative Claims (est) (atty fees and trustee fees) | $20,000.00 |
| | Statutory Fees of Chapter 7 Trustee | $0.00 |
| | Total Liquidation Value of Debtor | $0.00 |

| 2025-2026 | | | October | November | December | January | February | March | April | May | June | July | August | September | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gross Revenue after Loa | | | $86,000.00 | $86,000.00 | $50,000.00 | $66,000.00 | $86,000.00 | $86,000.00 | $86,000.00 | $91,000.00 | $91,000.00 | $50,000.00 | $95,000.00 | $95,000.00 | | |
| | | | | | | | | | | | | | | | | |
| Expenses | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| Payroll/1099 | | | $41,597.00 | $41,597.00 | $24,633.06 | $32,844.11 | $41,597.00 | $41,597.00 | $41,597.00 | $43,000.00 | $45,000.00 | $24,633.06 | $45,000.00 | $45,000.00 | | |
| Payroll & Accounting/W2/Tim, Jarret, Veronica | | | $13,778.10 | $13,788.10 | $13,788.10 | $13,788.10 | $13,788.10 | $13,788.10 | $13,778.10 | $13,778.10 | $13,778.10 | $13,788.10 | $13,778.10 | $13,778.10 | | |
| Health Insurance/Tim & Veronica | | | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | | |
| Repairs & Maintenance | | | $8,019.01 | $8,019.01 | $5,155.08 | $6,873.44 | $8,019.01 | $8,019.01 | $8,019.01 | $8,019.01 | $8,019.01 | $5,155.08 | $8,019.01 | $8,019.01 | | |
| Licences & Permits/Plates/2290 | | | $906.67 | $906.67 | $906.67 | $906.67 | $906.67 | $906.67 | $906.67 | $906.67 | $906.67 | $906.67 | $906.67 | $906.67 | | |
| Secured Debts | | | | | | | | | | | | | | | | |
| 3662 | 3ALAHNDV5PSNX9911 | | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | | $1,853.66 |
| 1823 | 4V4NC9EJ6RN663337 | | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $3,789.46 | | $3,789.46 |
| 6822 | 1M1AN4GY0RM043154 | | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | | $2,223.53 |
| 1800 | 4V4NC9EJ4RN663269 | | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | | $3,461.29 |
| 1802 | 1M1AN4GY5RM040556 | | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | | $2,526.29 |
| 1803 | 1M1AN4GY3RM044198 | | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | | $2,223.53 |
| 1805 | 1M1AMN4GY8KM001997 | | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | | $498.74 |
| | TAB Bank | | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | | $709.16 |
| Administrative Expenses (Chapter 11) | | | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | | $600.00 |
| Misc | | | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | | $500.00 |
| Office/Internet, Quickbooks, foxit, Avast | | | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | | $194.08 |
| Phone/Tim & Jarret | | | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | | $188.59 |
| Stor365/Parts storage | | | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | | $121.91 |
| | | | | | | | | | | | | | | | | $18,890.24 |
| Total Expenses | | | $83,552.44 | $83,562.44 | $63,734.57 | $73,663.98 | $83,562.44 | $83,552.44 | $83,552.44 | $84,955.44 | $86,955.44 | $63,734.57 | $86,955.44 | $87,778.42 | | |
| | | | | | | | | | | | | | | | | |
| Disposable Income | | | $2,447.56 | $2,437.56 | -$13,734.57 | -$7,663.98 | $2,437.56 | $2,447.56 | $2,447.56 | $6,044.56 | $4,044.56 | -$13,734.57 | $8,044.56 | $7,221.58 | $2,439.94 | |

25-31433-jpg Doc 98 FILED 09/19/25 ENTERED 09/19/25 13:09:57 Page 38 of 40

2026-2027

| | October | November | December | January | February | March | April | May | June | July | August | September | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gross Revenue after Loa | $95,000.00 | $95,000.00 | $50,000.00 | $66,000.00 | $95,000.00 | $95,000.00 | $95,000.00 | $95,000.00 | $95,000.00 | $50,000.00 | $100,000.00 | $100,000.00 | |
| Expenses | | | | | | | | | | | | | |
| Payroll/1099 | $45,000.00 | $45,000.00 | $24,633.06 | $32,844.11 | $45,000.00 | $45,000.00 | $45,000.00 | $45,000.00 | $45,000.00 | $24,633.06 | $47,000.00 | $47,000.00 | |
| Payroll & Accounting/W2/Tim, Jarret, Veronica | $13,778.10 | $13,788.10 | $13,788.10 | $13,788.10 | $13,788.10 | $13,778.10 | $13,778.10 | $13,778.10 | $13,778.10 | $13,788.10 | $13,778.10 | $13,778.10 | |
| Health Insurance/Tim & Veronica | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | |
| Repairs & Maintenance | $11,000.00 | $11,000.00 | $7,500.00 | $8,500.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $11,000.00 | $7,500.00 | $12,500.00 | $12,500.00 | |
| Licences & Permits/Plates/2290 | $1,006.67 | $1,006.67 | $1,006.67 | $1,006.67 | $1,006.67 | $1,006.67 | $1,006.67 | $1,006.67 | $1,006.67 | $1,006.67 | $1,006.67 | $1,006.67 | |
| Secured Debts | | | | | | | | | | | | | |
| 3662 3ALAHNDV5PSNX9911 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 |
| 1823 4V4NC9EJ6RN663337 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $3,789.46 | $3,789.46 |
| 6822 1M1AN4GY0RM043154 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,223.53 |
| 1800 4V4NC9EJ4RN663269 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 |
| 1802 1M1AN4GY5RM040556 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 |
| 1803 1M1AN4GY3RM044198 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 |
| 1805 1M1AMN4GY8KM001997 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 |
| TAB Bank | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 |
| Administrative Expenses (Chapter 11) | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 |
| Misc | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| Office/Internet, Quickbooks, foxit, Avast | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 |
| Phone/Tim & Jarret | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 |
| Stor365/Parts storage | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 |
| | | | | | | | | | | | | | $18,890.24 |
| Total Expenses | $90,036.43 | $90,046.43 | $66,179.49 | $75,390.54 | $90,046.43 | $90,036.43 | $90,036.43 | $90,036.43 | $90,036.43 | $66,179.49 | $93,536.43 | $94,359.41 | |
| Disposable Income | $4,963.57 | $4,953.57 | -$16,179.49 | -$9,390.54 | $4,953.57 | $4,963.57 | $4,963.57 | $4,963.57 | $4,963.57 | -$16,179.49 | $6,463.57 | $5,640.59 | $5,079.63 |

25-31433-jpg Doc 98 FILED 09/19/25 ENTERED 09/19/25 13:09:57 Page 39 of 40

2027-2028

| | October | November | December | January | February | March | April | May | June | July | August | September | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gross Revenue after L | $100,000.00 | $100,000.00 | $50,000.00 | $66,000.00 | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 | $50,000.00 | $105,000.00 | $105,000.00 | | |
| Expenses | | | | | | | | | | | | | | |
| Payroll/1099 | $47,000.00 | $47,000.00 | $24,633.06 | $32,844.11 | $47,000.00 | $47,000.00 | $47,000.00 | $47,000.00 | $47,000.00 | $24,633.06 | $47,500.00 | $47,500.00 | | |
| Payroll & Accounting/W2/Tim, Jarret, Veronica | $13,778.10 | $13,788.10 | $13,788.10 | $13,788.10 | $13,788.10 | $13,778.10 | $13,778.10 | $13,778.10 | $13,778.10 | $13,788.10 | $13,778.10 | $13,778.10 | | |
| Health Insurance/Tim & Veronica | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | | |
| Repairs & Maintenance | $13,500.00 | $13,500.00 | $8,500.00 | $9,500.00 | $13,500.00 | $13,500.00 | $13,500.00 | $13,500.00 | $13,500.00 | $8,500.00 | $14,500.00 | $14,500.00 | | |
| Licences & Permits/Plates/2290 | $1,106.67 | $1,106.67 | $1,106.67 | $1,106.67 | $1,106.67 | $1,106.67 | $1,106.67 | $1,106.67 | $1,106.67 | $1,106.67 | $1,106.67 | $1,106.67 | | |
| Secured Debts | | | | | | | | | | | | | | |
| 3662 3ALAHNDV5PSNX9911 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | | $1,853.66 |
| 1823 4V4NC9EJ6RN663337 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $3,789.46 | | $3,789.46 |
| 6822 1M1AN4GY0RM043154 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | | $2,223.53 |
| 1800 4V4NC9EJ4RN663269 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | | $3,461.29 |
| 1802 1M1AN4GY5RM040556 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | | $2,526.29 |
| 1803 1M1AN4GY3RM044198 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | | $2,223.53 |
| 1805 1M1AMN4GY8KM001997 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | | $498.74 |
| TAB Bank | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | | $709.16 |
| Administrative Expenses (Chapter 11) | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | | $600.00 |
| Misc | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | | $500.00 |
| Office/Internet, Quickbooks, foxit, Avast | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | | $194.08 |
| Phone/Tim & Jarret | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | | $188.59 |
| Stor365/Parts storage | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | | $121.91 |
| | | | | | | | | | | | | | | $18,890.24 |
| Total Expenses | $94,636.43 | $94,646.43 | $67,279.49 | $76,490.54 | $94,646.43 | $94,636.43 | $94,636.43 | $94,636.43 | $94,636.43 | $67,279.49 | $96,136.43 | $96,959.41 | | |
| Disposable Income | $5,363.57 | $5,353.57 | -$17,279.49 | -$10,490.54 | $5,353.57 | $5,363.57 | $5,363.57 | $5,363.57 | $5,363.57 | -$17,279.49 | $8,863.57 | $8,040.59 | $9,379.63 | |

2028-2029

| | October | November | December | January | February | March | April | May | June | July | August | September | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gross Revenue after L | $105,000.00 | $105,000.00 | $50,000.00 | $66,000.00 | $105,000.00 | $105,000.00 | $105,000.00 | $105,000.00 | $105,000.00 | $50,000.00 | $110,000.00 | $110,000.00 | |
| **Expenses** | | | | | | | | | | | | | |
| Payroll/1099 | $47,500.00 | $47,500.00 | $24,633.06 | $32,844.11 | $47,500.00 | $47,500.00 | $47,500.00 | $47,500.00 | $47,500.00 | $24,633.06 | $50,000.00 | $50,000.00 | |
| Payroll & Accounting/W2/Tim, Jarret, Veronica | $13,788.10 | $13,788.10 | $13,788.10 | $13,788.10 | $13,788.10 | $13,778.10 | $13,778.10 | $13,778.10 | $13,778.10 | $13,788.10 | $13,778.10 | $13,778.10 | |
| Health Insurance/Tim & Veronica | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | $1,163.58 | |
| Repairs & Maintenance | $17,000.00 | $17,000.00 | $9,500.00 | $10,500.00 | $17,000.00 | $17,000.00 | $17,000.00 | $17,000.00 | $17,000.00 | $9,500.00 | $18,000.00 | $18,000.00 | |
| Licences & Permits/Plates/2290 | $1,206.67 | $1,206.67 | $1,206.67 | $1,206.67 | $1,206.67 | $1,206.67 | $1,206.67 | $1,206.67 | $1,206.67 | $1,206.67 | $1,206.67 | $1,206.67 | |
| **Secured Debts** | | | | | | | | | | | | | |
| 3662 3ALAHNDV5PSNX9911 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 | $1,853.66 |
| 1823 4V4NC9EJ6RN663337 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $2,966.48 | $3,789.46 |
| 6822 1M1AN4GY0RM043154 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,244.35 | $2,223.53 |
| 1800 4V4NC9EJ4RN663269 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 | $3,461.29 |
| 1802 1M1AN4GY5RM040556 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 | $2,526.29 |
| 1803 1M1AN4GY3RM044198 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 | $2,223.53 |
| 1805 1M1AMN4GY8KM001997 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 | $498.74 |
| TAB Bank | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 | $709.16 |
| Administrative Expenses (Chapter 11) | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 |
| Misc | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| Office/Internet, Quickbooks, foxit, Avast | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 | $194.08 |
| Phone/Tim & Jarret | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 | $188.59 |
| Stor365/Parts storage | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 | $121.91 |
| | | | | | | | | | | | | | **$18,890.24** |
| Total Expenses | $98,736.43 | $98,746.43 | $68,379.49 | $77,590.54 | $98,746.43 | $98,736.43 | $98,736.43 | $98,736.43 | $98,736.43 | $68,379.49 | $102,236.43 | $103,059.41 | |
| Disposable Income | $6,263.57 | $6,253.57 | -$18,379.49 | -$11,590.54 | $6,253.57 | $6,263.57 | $6,263.57 | $6,263.57 | $6,263.57 | -$18,379.49 | $7,763.57 | $6,940.59 | $10,179.63 |